

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 29 A 8: 47

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ISAIAH SOLOMON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-3375** |
| **JAMES D. MILLER, JR., ET AL.** | **SECTION "F" (1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Isaiah Solomon, Jr., a state prisoner, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against Warden James D. Miller, Jr., Major Jerry P. Miller, and Jerry Young. Currently pending in the case are plaintiff's motion for entry of default judgment[1] and defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[2] The instant report will address both motions.

<u>Plaintiff's Motions for Entry of Default Judgment</u>

The Court first notes that plaintiff's motion for entry of default judgment pursuant to Fed.R.Civ.P. 55(b) was filed prematurely, in that the Clerk of Court had not entered a default pursuant to Fed.R.Civ.P. 55(a). <u>See, e.g.</u>, <u>Great Atlantic and Pacific Tea Co. v. Heath</u>, 1995 WL 258317, at *1 (E.D. La. April 27, 1995).

---

[1] Rec. Doc. 6.

[2] Rec. Doc. 8.

However, even had a default been entered, the granting of a default judgment is not warranted in this case. The entry of a default judgment is matter of discretion and "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. In fact, default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). Additionally, the Court notes that this civil action is subject to the Prison Litigation Reform Act of 1995, which provides that no relief shall be granted to a prisoner until the defendant has filed a reply. 42 U.S.C. § 1997e(g)(1).

Accordingly, for all of the foregoing reasons, plaintiff's motion for entry of default judgment should be denied.

## Defendants' Motion to Dismiss

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6),[3] which plaintiff has opposed.[4] The United States Fifth Circuit Court of Appeals has noted:

> Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the United States Supreme Court as follows: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (citations omitted). "When ruling on a rule 12(b)(6) motion, the court must liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts."

---

[3] Rec. Doc. 8.

[4] Rec. Doc. 10.

Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges the plaintiff's rights to relief based upon those facts. ... [W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." Ramming, 281 F.3d at 161-62 (quotation marks and citations omitted).

Defendants argue in their motion that plaintiff's complaint fails to allege the specific personal involvement of the named defendants with respect to the claims asserted in this lawsuit. To the extent that may be true, plaintiff has corrected any such error by explaining the factual basis of his claims against each defendant in his opposition to the motion to dismiss.[5] Therefore, this Court must determine whether those factual allegations state cognizable claims against the named defendants.

### Warden James Miller

In this lawsuit, it is claimed that, despite having been apprised that plaintiff feared his life is in danger, Warden James Miller has not intervened to protect plaintiff. As a result, plaintiff alleges that he has suffered "serious psychological injuries."[6]

---

[5] The United States Fifth Circuit Court of Appeals has held when a district court is considering a Rule 12(b)(6) motion in a case filed by a *pro se* plaintiff, the district court should consider the "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). In such cases, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Therefore, a *pro se* litigant's supplemental filings, such as plaintiff's memorandum in opposition to defendants' motion, which "embellish[] the original complaint's averments" may appropriately be considered when ruling on a Rule 12(b)(6) motion. Id.

[6] Rec. Doc. 10, supporting memorandum, pp. 2-3.

Plaintiff alleges that on September 22, 2003, he wrote a letter to Warden Miller requesting a transfer. In the letter, plaintiff alleged that his life was in danger, and he said he would hurt or kill anyone who threatened his life. On September 30, 2004, plaintiff again wrote to Warden Miller requesting a transfer. The Warden denied that request on October 22, 2004.

The Court finds that plaintiff's claim against Warden Miller is barred by 42 U.S.C. § 1997e(e), which provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In this case, plaintiff concedes that he has suffered no physical injury as a result of defendants' actions or failure to act.[7] Rather, he is seeking to recover based on alleged "mental and emotional distress."[8] In light of that fact, his failure-to-protect claim against Warden Miller necessarily fails. See Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999).

Moreover, in any event, the Court notes that "[t]o prevail on a section 1983 failure to protect claim, the prisoner must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." Id. (internal quotation marks omitted). The United States Fifth Circuit Court of Appeals has stated:

> In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact.

---

[7] Rec. Doc. 10, supporting memorandum, p. 4.

[8] Rec. Doc. 1, supporting memorandum, p. 6.

Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998) (internal quotation marks, citation, and emphasis omitted).

In the instant case, plaintiff accuses Warden Miller of "gross negligence and deliberate indifference." A prison official cannot be held liable on a failure-to-protect claim under § 1983 based on allegations of negligence. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). Rather, as noted, a prison official may be held liable on such a claim in a § 1983 action only where he was aware of a substantial risk of serious harm and acted with deliberate indifference. However, plaintiff's utterly conclusory allegation of deliberate indifference is insufficient to state a claim and no inference of deliberate indifference can be drawn from his factual allegations. Plaintiff claims that he believes that his life is in danger and that he twice wrote to the Warden expressing that fear. However, a failure-to-protect claim cannot be based on the fact that a prison inmate expresses vague fears potential harm. Rather, for a prison official to be held liable for failure to protect any inmate, the official must have been apprised of a reasonable and verifiable basis for the inmate's fears; otherwise, "the prison system would be subject to wholesale manipulation by inmates advancing only vague assertions of threats." Armstrong v. Price, No. 2:02-CV-0253, 2004 WL 1908226, at *1 (N.D. Tex. Aug. 26, 2004); see also Rivera v. New York, No. 96 CIV. 7697, 1999 WL 13240, at *9 ("communicating vague concerns of future assault by unknown individuals are not sufficient to impose liability on an officer who fails to protect an inmate").[9]

---

[9]   Moreover, it is clear that when plaintiff advised prison officials of specific perceived threats, his claims were investigated rather than ignored. For example, plaintiff attached to and incorporated into his complaint the responses by prison officials regarding his contention that a "hit" had been placed on him by Milton Jones, a fellow inmate. Those responses show that officials investigated the allegations and determined that, although there had been a past altercation with Jones when he

For all of the foregoing reasons, the Court finds that plaintiff has failed to state a cognizable claim against Warden James Miller and that the claims against him should therefore be dismissed.

### Major Jerry P. Miller

Plaintiff's claim against Major Jerry P. Miller is that he misused the prison disciplinary procedure to falsely accuse and convict plaintiff of disciplinary infractions. On December 9, 2002, Major Miller instituted disciplinary charges alleging that plaintiff possessed a "shank," i.e. a weapon, and threatened kill someone so that he would be transferred to the Louisiana State Penitentiary in Angola, Louisiana. Major Miller then found plaintiff guilty of the disciplinary charges in the subsequent disciplinary proceedings. On September 23, 2003, plaintiff was again charged with a disciplinary infraction for writing the letter to Warden Miller in which plaintiff stated that he would hurt or kill anyone who threatened his life. At the subsequent disciplinary proceeding on that charge, Major Miller again found plaintiff guilty.

The United States Fifth Circuit Court of Appeals has held that a prisoner's claim that he was he was falsely accused and convicted of a disciplinary infraction "is indistinguishable from a malicious prosecution claim." Ordaz v. Martin, No. 93-4170 (5th Cir. Sept. 15, 1993) (unpublished). However, in 2003, the Fifth Circuit reexamined the body of law regarding malicious prosecution claims in federal civil rights actions and held that there is no "freestanding constitutional right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003), cert.

---

allegedly rebuffed plaintiff's sexual advances in the shower, there was no evidence of any lingering animosity or danger to plaintiff. However, the final administrative response by Linda Ramsey indicates that prison officials nevertheless gave plaintiff and Jones different housing assignments. In any event, the Court notes that the mere fact that prisoners have had a prior altercation does not necessarily mean that there is a substantial risk of a future serious altercation. See Despaigne v. Crowley, 89 F. Supp. 2d 582, 586 (E.D. Pa. 2000).

denied, 125 S. Ct. 31 and 33 (2004). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, No. 03-41002, 2004 WL 1682752, at *1 (5th Cir. July 28, 2004) (unpublished).[10]

---

[10] Moreover, even under prior law, plaintiff's claim would fail because he could not meet the "favorable termination" requirement to pursue such a claim. In Ordaz, the Fifth Circuit noted:

> Even assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), however, we have held that "a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor." [Brummett v. Camble, 946 F.2d 1178, 1180 (5th Cir. 1991).] Our reasoning in this regard is straightforward:
>
>> Absent a ... requirement of "favorable termination" for the constitutional tort of malicious prosecution, a plaintiff could state a § 1983 claim even in cases in which he was ultimately convicted. In such cases, the federal courts would be forced to permit defendants to relitigate the merits of their criminal prosecutions via § 1983 despite the state court conviction. Such a rule, which poses the prospect of harassment, waste, and endless litigation, conflicts with the most basic principles of federalism.
>
> Id. at 1183.
> The concerns highlighted in Brummett apply equally, if not with more force, in the context of § 1983 claims predicated on the filing of false disciplinary charges in state prisons. Without an allegation "that the [disciplinary proceeding] terminated in his favor," [the prisoner] simply has not made an arguable showing that any federally protected right has been violated. Absent such an allegation, his false disciplinary claim is legally frivolous under our precedent.

Ordaz, No. 93-4170; see also Reed v. Quarterman, No. 96-40949 (5th Cir. Oct. 20, 1997); Reed v. Griggs, No. 94-40587 (5th Cir. Dec. 13, 1994). Because plaintiff was convicted of the rule violations in his prison disciplinary proceedings, he would be unable to meet the "favorable termination" requirement.

7

Accordingly, plaintiff has no cognizable claim against Major Miller regarding his role in the prison disciplinary proceedings, and the claims against him should be dismissed.[11]

### Jerry Young

Plaintiff claims that Jerry Young disregarded his duties and the prison's procedures and rules in rejecting plaintiff's efforts to secure a transfer to a different facility. Plaintiff claims that, on September 28, 2003, he wrote a letter to the Secretary of the Louisiana Department of Public Safety and Corrections requesting a transfer to a different facility. On October 8, 2003, Young responded

---

[11] Out of an abundance of caution, the Court notes that to the extent that plaintiff may be alleging that his due process rights were violated by Major Miller in the disciplinary proceedings, he also has failed to state a claim on that basis. The United States Supreme Court has held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citations omitted). The Supreme Court further held that a prisoner's "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)). The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added). In the instant case, plaintiff has not alleged that his punishment in the disciplinary proceedings in any way extended the duration of his incarceration, such as if "good time" credit had been lost. Rather, plaintiff mentions no punishment other than placement in lockdown.

to the letter stating that plaintiff would not be considered for a transfer until he had "work[ed his] way out of extended lockdown and maximum custody." Plaintiff then filed an apparently unsuccessful administrative grievance, contending that other inmates had been transferred to other facilities directly from extended lockdown and maximum custody.

Even if the Court assumes that Young would have authority to grant plaintiff's transfer request, plaintiff has failed to state a cognizable claim against Young. The United States Fifth Circuit Court of Appeals has noted:

> To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law.

Bass v. Parkwood Hospital, 180 F.3d 234, 241 (5th Cir. 1999) (quotation marks omitted); see also Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).

As an initial matter, the Court notes that even if, as plaintiff alleges, Young failed to follow the prison's procedures and rules in processing plaintiff's transfer request, such a failure, without more, simply does not rise to the level of a constitutional violation. See Meyer v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); see also Sandoval v. Fox, No. 04-41251, 2005 WL 1444237, at *1 (June 21, 2005) (unpublished). Moreover, plaintiff's claim necessarily fails because he has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir.

1996); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989).

For all of the foregoing reasons, the Court finds that plaintiff has failed to state a cognizable claim against Jerry Young and that the claims against him should therefore be dismissed.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's motion for entry of default judgment be **DENIED**.

It is **FURTHER RECOMMENDED** that defendants' motion to dismiss be **GRANTED** and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-eighth day of June, 2005.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE